## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

RAYMOND L. WAGNER,                    :

    Plaintiff,                    :
                        Case No. 3:13cv00194

 vs.                                   :
                        District Judge Thomas M. Rose
CAROLYN W. COLVIN,                    :   Chief Magistrate Judge Sharon L. Ovington
Acting Commissioner of the Social
Security Administration,              :

    Defendant.                    :

---

## REPORT AND RECOMMENDATIONS[1]

---

### I.    <u>Introduction</u>

    Plaintiff Raymond L. Wagner, II brings this case challenging the Social Security

Administration's denial of his applications for Supplemental Security Income (SSI) and

Disability Insurance Benefits (DIB).  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).

    Plaintiff has twice applied for benefits.  Plaintiff first applied for DIB in December

2002.  (*PageID#* 110).  The agency denied his application through the administrative

process.  In a decision dated January 24, 2005, administrative law judge ("ALJ") David

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

1

Redmond determined that Plaintiff retained the residual functional capacity ("RFC")[2] to perform sedentary exertional work.[3]  (*PageID##* 107-21).  ALJ Redmond determined that Plaintiff should not be expected to lift more than a maximum of 5 pounds and permitted to alternate between sitting and standing as needed.  ALJ Redmond also limited Plaintiff to the performance of simple tasks that involve minimal personal contacts.  (*PageID#* 119).

Plaintiff subsequently applied for DIB and SSI on July 13, 2009, alleging he was disabled due to emphysema, congestive obstructive pulmonary disease ("COPD"), hernia (from coughing so much), diabetes, bad knees, and glaucoma.  (*PageID#* 269).

Following an administrative hearing, ALJ Amelia G. Lombardo determined that Plaintiff had the RFC to perform light exertional work except that he can occasionally kneel, crouch, and crawl, and he must avoid extremes of heat, cold, and humidity. (*PageID#* 66).  ALJ Lombardo concluded in a written decision dated September 22, 2011, that Plaintiff was not disabled because he could perform his past relevant work as a wire harness assembler.  She based her conclusion on vocational expert testimony that characterized his past work as light exertional work.  (*PageID##* 57-72).

---

[2]The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. § 404.1545(a); *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

[3]The Regulations define sedentary work as involving the ability to lift "no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools...." 20 C.F.R. § 404.1567(a).

The ALJ's nondisability determination and the resulting denial of benefits later became the final decision of the Social Security Administration when the Appeals Council denied Plaintiff's request for further review.  (*PageID##* 36-38).

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #10), the Commissioner's Memorandum in Opposition (Doc. #13), Plaintiff's Reply (Doc. #14), the administrative record (Doc. #7), and the record as a whole.

## II.  **Background**

### A.  **Plaintiff's Vocational Profile and Testimony**

Plaintiff was 48 years old on the alleged disability onset date, which defined him as a "younger individual" for purposes of resolving his DIB and SSI claims.  *See* 20 C.F.R. §§ 404.1563(c); 416.963(c)[4]; *PageID#* 264.  Plaintiff has a high school education, *see* 20 C.F.R. § 404.1564(b)(4), and past relevant employment as a lead janitor, wire harness assembler, carpet cleaner, and stock clerk.  (*PageID##* 71, 270, 274).

Plaintiff testified that he was staying with a friend, but was basically homeless. (*PageID#* 81).  He testified he stayed downstairs in his friend's house due to no air conditioning upstairs.  (*Id.*).  Plaintiff's daughter drove him to the hearing.  Plaintiff explained that due to his vision problems and his coughing, it was unsafe for him to drive and that he turned his driver's license in to the state.  (*PageID##* 81-82).  Plaintiff was prescribed inhalers from the Drew Health Center, but usually got free samples because he

---

[4]The remaining citations will identify the pertinent DIB Regulations with full knowledge of the corresponding SSI/DIB Regulations.

could not afford to purchase them. (*PageID#* 83). At the time of the hearing, Plaintiff was still smoking, but that was "not for lack of trying." (*Id.*). He stated he has "quit four different times in the last eight months." (*Id.*).

Plaintiff further testified that he had a cardiac stent placed in October of 2010, but had been unable to follow up with a cardiologist due to not having health insurance. (*PageID#* 84). He also testified that he suffers physically from COPD/emphysema, "glaucoma, left knee is trashed, hurts all the time, lower back hurts. My neck is painful most of the time. My right hip is starting to hurt. I think that's from limping on my left - - using my left leg, you know. And I get the shakes often, but they haven't even started to go with anything there, because they want to check on getting my breathing and diabetes and heart under control before we work with anything else." (*Id.*).

Plaintiff also described three different hernias: a double hernia in his groin, a navel hernia, and an upper abdominal hernia. (*PageID##* 84-85). He testified that he can walk about 15 to 20 feet before he becomes out of breath. (*PageID#* 85). Plaintiff testified that, when standing, "I get dizzy and lightheaded." (*Id.*). He also testified that his coughing spells cause dizziness and lightheadedness even while sitting. (*Id.*). He has also passed out from coughing. (*Id.*).

As to his activities of daily living, Plaintiff testified that he cannot do household chores, but relies upon a friend with whom he lives. (*PageID#* 86). Plaintiff spends his day resting and watching television. (*Id.*). Plaintiff testified that even just walking into

4

his kitchen to get something to drink requires him to subsequently sit down and rest. (*PageID#* 87).

When cross examined by his counsel, Plaintiff acknowledged that he experiences a coughing fit at least once per hour and then "little coughs . . . every couple minutes." (*PageID#* 87).  He nearly always feels lightheaded while coughing.  (*PageID#* 88). When asked by counsel why his hernias have not been repaired, Plaintiff responded that the doctors would not perform surgery due to his severe breathing problems.  The doctors were not sure if they could bring him out of anesthesia.  (*PageID##* 88-89).

Plaintiff also testified that he still has problems with his low back, neck, and leg. He stated that, since 2005, "[t]hey're a little worse, but they kind of get pushed to the side, because of my breathing and other problems that I'm having."  (*PageID#* 91).  His main problem is "dealing with not being able to breath."  (*Id.*).  Plaintiff believed low back, neck, and leg problems are "much worse" since 2005 because of the coughing and breathing problems.  (*PageID#* 93).

Plaintiff also testified to suffering from depression.  He stated he is "ready to shoot myself" and thinks about suicide "[e]very damn day."  (*PageID#* 94).  He testified he is tired all the time and lacks the motivation to do things.  (*Id.*).

### B.      Vocational Expert Testimony

A vocational expert ("VE") classified Plaintiff's past employment as a lead janitor, carpet cleaner, and stock clerk, all performed at a medium to heavy exertional, skilled level.  His past relevant work as a wire harness assembler was performed at the light,

semi-skilled level.  (*PageID*## 95-96).  Based on Plaintiff's age, education, work experience and RFC, the VE testified that Plaintiff could perform his past relevant work as a wire harness assembler.  (*PageID*# 66).

   C.    **Relevant Medical Opinions**

**Physical Impairments**

   1.    **Damian M. Danopulos, M.D.**

Dr. Danopulos examined Plaintiff on October 27, 2009, on behalf of the Ohio Bureau of Disability Determination ("BDD").  (*PageID*## 389-99).  Plaintiff complained of effort-related shortness of breath with chronic cough, bilateral knee pain (worse on the left), diabetes, vision problems, double inguinal hernia, and depression.  (*PageID*# 390).  Plaintiff reported that he does not have insurance and for this reason he cannot use any inhalers or go to a specialist to be treated.  (*PageID*# 389).  Examination revealed Plaintiff's height was 69 1/4" and weight was 203 pounds.  Lungs revealed Ronchi to auscultation.  Chest excursions were diminished and expiration was prolonged.  The pulmonary function study revealed mild degree obstructive and restrictive lung disease with positive post bronchodilator effect.   (*PageID*# 392-93).  Both knees revealed normal motions.  The left knee was highly painful by motions.  The right knee was only very slightly painful.   No unilateral knee swelling existed.  The left knee x-rays were normal.  No diabetic complications existed except his vision problems which are triggered from a previous astigmatism.  He has had two surgeries in the left and right eyes.   Dr. Danopulos administered an eye examination, and found Plaintiff's vision, with glasses,

6

was not good.  (*PageID##* 391, 393).  Plaintiff exhibited a right side 1 + inguinal hernia; on the left, Plaintiff exhibited only pain and Dr. Danopulos found no inguinal hernia.  Dr. Danopulos assessed chronic bronchitis, early emphysema, left knee arthralgias, status post five times surgery of the left knee with normal x-rays, mature-onset diet controlled diabetes, vision problems with peripheral vision disturbance, and circumstantial depression.  (*PageID#* 394).  He opined that Plaintiff's ability to do work-related activities is affected and restricted from the emphysema with chronic bronchitis, plus his vision problems which affected his driving, and inguinal hernia in the right of mild degree.  (*Id.*).

On June 3, 2010, Dr. Danopulos performed pulmonary function testing which indicated moderate degree obstructive and mild degree restrictive lung disease with positive post bronchodilator effect.  (*PageID##* 459-65).

## 2.   Myung Cho, M.D.

Dr. Cho, a state agency reviewing physician, offered an opinion regarding Plaintiff's physical functioning on December 17, 2009.  (*PageID##* 408-15).  Dr. Cho found that Plaintiff could lift/carry/push/pull 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 6 hours and sit for 6 hours.  (*PageID#* 409).  Dr. Cho also opined that Plaintiff is limited to occasional climbing of ramps and stairs, kneeling, crouching and crawling; but he can never climb ladders, rope or scaffolds.  (*PageID#* 410).  Dr. Cho further opined that Plaintiff's field of vision is limited due to his alleged decreased peripheral vision which limited him to no commercial driving.  (*PageID##*

411-12). Dr. Cho also opined that Plaintiff should avoid concentrated exposure to fumes, odors, gases, etc., and should avoid even moderate exposure to hazards. (*PageID#* 412). Dr. Cho determined that ALJ Redmond's 2005 findings should not apply because Plaintiff "has the new condition of COPD and no longer has a cervical strain." (*PageID#* 410). Dr. Cho concluded that Plaintiff's statements are partially credible. (*PageID#* 413). David Brock, D.O., reviewed the record on June 23, 2010, and affirmed Dr. Cho's assessment. (*PageID#* 466).

### **3**. **William J. Kessler, M.D.**

Plaintiff was examined by ophthalmologist, Dr. Kessler, on May 31, 2010, on behalf of the Ohio BDD. (*PageID##* 454-57). After vision testing, Dr. Kessler opined that Plaintiff is not statutorily blind. However, he would have trouble driving at night and is actually borderline for driving during the daylight hours. (*PageID#* 456). He further opined that Plaintiff cannot read smaller type, would tire easily when reading large type, and should avoid working around heights or hazards. (*Id.*).

### **Mental Impairments**

### **1.** **Kenneth H. Wilson, Psy.D.**

Plaintiff received psychotherapy treatment with Dr. Wilson from May 2004 through November 2006, through a Bureau of Workers' Compensation claim. (*PageID##* 469-81). Plaintiff was diagnosed with psychogenic pain. (*Id.*). On November 22, 2006, Dr. Wilson reported that Plaintiff has experienced considerable pain and marked psychological/emotional concomitants. He has demonstrated depression, anxiety,

frustration, pessimism, a sense of futility at times, and irritability. He has maintained an interest in a return-to-work effort for much of the time during therapy, but has experienced numerous obstacles in this area, including participation with BVR that yielded no results in terms of job placement, and a very difficult time when looking for work on his own. Dr. Wilson also reported he treated Plaintiff for weekly psychotherapy sessions, which was expected to continue for 4 months. Dr. Wilson noted Plaintiff's prognosis is generally good. (*PageID##* 467-68).

### 2. <u>Giovanni Bonds, Ph.D.</u>

On December 9, 2009, Dr. Bonds consultatively examined Plaintiff at the request of the Ohio BDD. (*PageID##* 400-05). Plaintiff reported he has friends with whom he discusses his problems and spends time. (*PageID#* 401). He was not under the influence of drugs or alcohol at the time of the evaluation. (*PageID#* 402). On mental state examination, Dr. Bonds observed Plaintiff's mood seemed depressed. Plaintiff reported to Dr. Bonds that he is often depressed because he is not able to work and has no money. He felt hopeless and helpless and has had thoughts of suicide. (*Id.*). Plaintiff also reported "a little trouble" sleeping and that he lacks the energy to do things. (*Id.*). As to his daily activities, Plaintiff reported to Dr. Bonds that he does very little, he rarely leaves his home, and even minimal chores cause him to feel exhausted. (*PageID##* 403-04). Dr. Bonds stated that Plaintiff has some awareness and understanding of his problems. Dr.

Bonds diagnosed Plaintiff with a depressive disorder and cannabis dependence.  He assigned Plaintiff a GAF score 50.[5]

According to Dr. Bonds, Plaintiff "would have some problems with persisting at even simple repetitive tasks."  (*PageID#* 405).  Dr. Bonds found Plaintiff would be moderately restricted in his ability to withstand the stress and pressure associated with day to day work activity, noting Plaintiff "is depressed and would have some difficulty with handling work demands for speed, accuracy and productivity and meeting deadlines and productivity requirements."  (*Id.*).

### 3.     Tanseem Khan, Ed.D.

After review of Plaintiff's medical record on December 21, 2009, Dr. Khan assessed his mental condition at the request of the Ohio BDD.  (*PageID##* 416-33).  Dr. Khan found Plaintiff had a mild restriction in his daily activities; no difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation.  (*PageID#* 426).  Dr. Khan further determined that the evidence did not establish the presence of the "C" criteria. (*PageID#* 427).

---

[5]"GAF," Global Assessment Functioning, is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness.  It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation.  *See Martin v. Comm'r of Soc. Sec.*, 61 Fed. Appx. 191, 194 n.2 (6th Cir. 2003); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision ("DSM-IV-TR") at 32-34. Individuals with a GAF score of 50 are classified as having "serious symptoms ... or serious impairment in occupational, social, or school functioning."  (*Id.*).

Dr. Khan determined that Plaintiff would have moderate restrictions in his ability to complete a normal work-day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods and respond appropriately to changes in the work setting.  (*PageID#* 431).

In the narrative assessment of Plaintiff's ability to engage in work-related activities from a mental standpoint, Dr. Khan gave weight to Dr. Bonds' report, "in the absence of a treating source."  (*PageID#* 433).  Dr. Khan concluded that Plaintiff retains the capability to learn and perform simple, and multi-step tasks in a routine and predictable environment.  (*Id.*).  On May 9, 2010, state agency psychologist, Mel Zwissler, Ph.D., affirmed Dr. Khan's assessment.  (*PageID#* 452).

### 4.    Donald J. Kramer, Ph.D.

On May 3, 2010, Plaintiff was again evaluated by the Ohio BDD.  (*PageID##* 445-51).  Dr. Kramer noted that Plaintiff reported his only actual work limitations are physical in nature.  (*PageID#* 445).  Plaintiff noted, "I get out of breath real easy.  Just walking from my car to your office puts me out of breath."  (*Id.*).  Plaintiff reported increasing symptoms of depression because he is homeless and because of his increasing physical limitations.  During the mental status examination, Dr. Kramer reported that Plaintiff appeared to be in physical distress as he "displayed obvious respiratory problems.  He was constantly short of breath and frequently would have rather violent coughing spells throughout the interview."  (*PageID#* 447).  Plaintiff reported his daily

11

activities were limited by his physical condition, involving mostly sitting around and watching television. (*PageID#* 449). Dr. Kramer diagnosed Plaintiff with an adjustment disorder with a depressed mood and poly-substance dependence in sustained remission. (*PageID#* 450). He opined that Plaintiff had the mental ability to perform simple and repetitive tasks. (*PageID#* 451).

## III. Administrative Review

### A. "Disability" Defined

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§ 423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

A DIB/SSI applicant bears the ultimate burden of establishing that he or she is under a disability. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997); *see Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992); *see also Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978).

### B. ALJ Lombardo's Decision

ALJ Lombardo resolved Plaintiff's disability claim by using the five-Step

sequential evaluation procedure required by Social Security Regulations.  *See PageID##* 61-62; *see also* 20 C.F.R. § 404.1520(a)(4).  Her pertinent findings began at Step 2 of the sequential evaluation where she concluded that Plaintiff had the following severe impairments: chronic obstructive pulmonary disease, residual effects of myocardial infarction and stent placement, and residual effects of knee problems.  (*PageID#* 63).  ALJ Lombardo determined that Plaintiff's cervical and lumbar spine condition has improved since ALJ Redmond issued his decision in 2005.  (*Id.*).  ALJ Lombardo also determined that Plaintiff's complaints of a hernia, vision difficulties, and diabetes mellitus were non-severe impairments.  (*PageID##* 63-64).

The ALJ concluded at Step 3 that Plaintiff did not have an impairment or combination of impairments that met or equaled the criteria in the Commissioner's Listing of Impairments.  (*PageID#* 65).

At Step 4, the ALJ concluded that Plaintiff retained the RFC to perform light work except that he can only occasionally kneel, crouch, and crawl, and he must avoid extremes of heat, cold, and humidity.  (*PageID#* 66).  The ALJ further found that Plaintiff is capable of performing his past relevant work as a wire harness assembler.  (*PageID#* 71).

The ALJ's findings throughout her sequential evaluation led her to ultimately conclude that Plaintiff was not under a disability and was therefore not eligible for DIB or SSI.  (*PageID##* 71-72).

## IV.     <u>Judicial Review</u>

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance..." *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal criteria – may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part

14

*Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## V.    Discussion

### A.    Plaintiff's Contentions

Plaintiff sets forth the following assignments of error: (1) the ALJ erred in finding that Plaintiff can perform greater than sedentary work contrary to the evidence and administrative *res judicata*; (2) the ALJ plainly erred in failing to find that Plaintiff suffers from any mental health related limitations; (3) the ALJ's holding that Plaintiff has no visual impairment or vision related limitations is unsupported and unexplained; (4) the ALJ unreasonably and arbitrarily holds Plaintiff's abdominal hernias to be non-severe because Plaintiff smokes; and (5) the ALJ's adverse credibility findings are not supported by substantial evidence.  (Doc. #10, *PageID##* 566-75, Doc. #14, *PageID##* 595-604).

### B.    Analysis

### 1.

Plaintiff first argues that ALJ Lombardo erred by finding ALJ Redmond's determination to be non-binding because evidence shows he improved.  Plaintiff contends that "ALJ Lombardo stops well short of providing a reasoned, supported explanation for this holding" and that "the record before ALJ Lombardo overwhelmingly established that Plaintiff's physical condition has significantly deteriorated since ALJ Redmond's decision, not improved."  (Doc. #10, *PageID#* 567).

15

In *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997), the Sixth Circuit held that "[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ."  The Commissioner bears the burden of proving changed circumstances so as to escape being bound by the principles of *res judicata.  Id.* at 843.  If an ALJ's departure from the findings of a prior ALJ is supported by substantial evidence, this Court will affirm.  (*Id.*).

The decision in *Drummond* led to the Commissioner's issuance of an Acquiescence Ruling mandating that ALJs in all states within the Sixth Circuit apply *res judicata* to a prior ALJs assessment of a claimant's RFC and other findings made as part of a sequential evaluation.  The Acquiescence Ruling dictates:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as a prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law. . .

AR 98-4(6), 1998 WL 283902, at 3 (June 1, 1998).

Here, ALJ Lombardo first noted that Plaintiff "previously file an application for a period of disability and disability insurance benefits in December 2002, and Administrative Law Judge David A. Redmond eventually issued a decision on January 24, 2005, finding that the claimant was not disabled."  (*PageID#* 60).  She next cited *Drummond* and Acquiescence Ruling 98-4(6), and then concluded that Plaintiff "has produced new and material evidence documenting a significant change in [his]

16

condition." (*Id.*). ALJ Lombardo found "the newly-submitted evidence shows improvement of the claimant's physical condition" and therefore, the "previous residual functional capacity determination is not binding." (*Id.*).

> ALJ Lombardo later discussed the improvement in Plaintiff's condition as follows:
>
> Strains of the cervical and lumbar spine were found to be a "severe" impairment in the prior decision, and Administrative Law Judge Redmond accordingly limited the claimant to sedentary exertion (Exhibit B1A). However, the claimant's condition has improved since that time. For example, when consultative physician Damian Danopulos, M.D., examined the claimant on October 27, 2009, he reported that a musculoskeletal examination showed no pain upon pressure of the spine, normal and painless lumbar spine motions, normal straight leg raising, a normal toes and heel gait, and no evidence of nerve root compression or peripheral neuropathy. A neurological examination was also normal (Exhibit B4F, page 5). Moreover, progress notes from the Drew Health Center between April 2010 and June 2011 show no musculoskeletal abnormalities (Exhibit B20F, pages 1-11).

(*PageID#* 63). The Commissioner argues that "[t]he problem with [Plaintiff's] argument . . . is that ALJ Redmond's RFC finding was based on a whole different set of severe impairments than the one's ALJ Lombardo found. ALJ Redmond found that Mr. Wagner had severe impairments involving his knee, a cervical strain, and a thoracic strain (Page ID 119). ALJ Lombardo, though, found that his cervical and thoracic strains had removed themselves, and were no longer severe impairments necessitating sedentary-level restrictions." (Doc. #13, *PageID#* 586). Indeed, the Commissioner's argument is well-taken. The Court finds that substantial evidence supports the ALJ's finding that Plaintiff's physical condition had changed such that the prior RFC was no longer binding.

Accordingly, as there was new and material evidence indicating a change in Plaintiff's condition, the ALJ did not err in declining to adopt the RFC set forth by ALJ Redmond in his 2005 decision.

### 2.

Plaintiff next argues that the ALJ erred by failing to acknowledge that he suffered from a severe mental impairment and by failing to include "even a single mental health related limitation in the assigned residual functional capacity."  (Doc. #14, *PageID#* 596).

In assessing Plaintiff's mental impairments, ALJ Lombardo first noted that ALJ Redmond had found Plaintiff's psychogenic pain disorder to be a "severe" impairment. (*PageID#* 64).  ALJ Lombardo noted that Plaintiff "has also been diagnosed with a depressive disorder, not otherwise specified, and he has a history of cannabis dependence," but that his "mental impairments, considered singly and in combination, do not cause more than minimal limitations in the claimant's ability to perform basic mental work activities and are therefore nonsevere."

In reaching this conclusion, ALJ Lombardo gave "less weight to the opinions of the initial consultative and reviewing psychologists and . . . greater weight to the opinion of consultative psychologist Dr. Kramer."  (*PageID#* 65).

Dr. Kramer evaluated Plaintiff on May 3, 2010.  (*PageID##* 445-51).  During the evaluation, Plaintiff reported that his depression has been increasing because he is homeless and because of his increasing physical limitations.  (*PageID#* 445).  Dr. Kramer noted that Plaintiff reported "some increases in suicidal thoughts over the past several

18

months but denies any intent." (*Id.*). It was also noted that Plaintiff "reports that he would be open to psychological counseling and treatment but says that he cannot afford this at the present time." (*PageID#* 447). Dr. Kramer opined that Plaintiff's mental ability to relate to others, including co-workers and supervisors may be mildly impaired by this depression and irritability. He also noted that Plaintiff "says that he is more frustrated, feels more angry, and is more withdrawn from people than he used to be." (*PageID#* 450). Dr. Kramer opined that Plaintiff's mental ability to understand, remember and follow instructions is not impaired, and that his ability to maintain attention, concentration, persistence, and pace to perform simple and repetitive tasks appears to be mildly impaired. (*Id.*). Dr. Kramer also opined that Plaintiff's mental ability to withstand the stress and pressures associated with day-to-day work activities is mildly impaired "based on his presentation and interaction in today's examination." (*Id.*). Overall, Dr. Kramer concluded that Plaintiff "has the mental ability to perform simple and repetitive tasks." (*Id.*).

As to Plaintiff's argument that ALJ Lombardo erred by failing to find his mental impairments to be "severe," the Commissioner is correct in noting that such a distinction is "legally irrelevant" in this case because the ALJ determined Plaintiff had other severe impairments. *See Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 190-91 (6th Cir. 2009) ("This Court has previously found it 'legally irrelevant' that some of a claimant's impairments were considered non-severe, when others were found to be severe, because a finding of severity as to even one impairment clears the claimant of step two of the

19

analysis and should cause the ALJ to consider both the severe and nonsevere impairments in the remaining steps.")(internal citations omitted).

On the other hand, the ALJ's failure to include any mental health limitations in Plaintiff's RFC is not supported by substantial evidence. In particular, another consulting examiner, Dr. Bonds, evaluated Plaintiff in December 2009 and opined that Plaintiff's "mental ability to withstand the stress and pressure associated with day to day work activities is moderately impaired," and that Plaintiff "is depressed and would have some difficulty with handling work demands for speed, accuracy and productivity and meeting deadlines and productivity requirements." (*PageID#* 405). Dr. Bonds' conclusions were thereafter affirmed by two agency consulting reviewers: Tasneem Khan and Dr. Zwissler. (*PageID##* 416-33, 452). These opinions are also consistent with Plaintiff's testimony that he is suicidal, lacks motivation, and has increasing depression. (*PageID#* 94). Such symptoms were also recorded in Dr. Kramer's evaluation. (*PageID##* 445-51). It was therefore error for the ALJ to select only evidence that supported a non-disability finding. *See Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000)("ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position."); *see also Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984); *Kuleszo v. Barnhart*, 232 F.Supp.2d 44, 57 (S.D.N.Y. 2002). Moreover, even assuming the ALJ somehow properly relied only upon the opinion of Dr. Kramer, a close review of Dr. Kramer's opinion indicates only that he believed Plaintiff "has the mental ability to perform simple and repetitive tasks." (*PageID#* 451). Thus, while the ALJ's failure to include even one

mental limitation in Plaintiff's RFC indicates she must believe Plaintiff was capable of performing an unrestricted range of tasks, Dr. Kramer's evaluation did not actually provide support for the ALJ's viewpoint.

Despite the Commissioner's contentions otherwise, these failures regarding Plaintiff's mental health limitations were not harmless. For example, the ALJ finds Plaintiff is able to perform his past relevant work as a wire harness assembler and ends her analysis at that point, yet the VE testified that a limitation to "unskilled work" would preclude performing the duties of such a position. (*PageID#* 98). The Commissioner argues the ALJ's failure to include mental health limitations is also harmless because the VE identified the positions of mail clerk and routing clerk when asked by the ALJ "about a restricted range of light work jobs involving only simple, repetitive tasks, and no contact with the general public (Page ID 97-102)," and "[n]o where does [Plaintiff] contend that these mental-related RFC restrictions are an insufficient accommodation for his alleged mental limitations." (Doc. # 13, *PageID#* 589)(citation in original). While the ALJ did, in fact, ask the VE to describe jobs in the regional economy at the light exertion level, the ALJ specifically directed the VE *not* to consider a limitation to simple, repetitive work, but only a limitation to unskilled work. (*PageID##* 96-97). For these reasons, the ALJ's decision lacks substantial support in the evidence and must be reversed.

**3.**

Plaintiff also argues the ALJ's holding that he has no visual impairments or vision related limitations is unsupported and unexplained.  (Doc. #10, *PageID#* 571-72; Doc. #14, *PageID#* 599-600).  When discussing Plaintiff's vision difficulties, ALJ Lombardo found that "Dr. Danopulos stated that an examination of the eyes was normal and that Wagner's visual acuity was 20/50 in the right eye, 20/70 in the left eye, and 20/50 in both eyes, with glasses." (*PageID##* 63-64).  ALJ Lombardo further noted that Dr. Kessler reported only a mild reduction in the visual field quadrants of the left eye, which was consistent with nystagmus.  He also noted amblyopia of the left eye, but he stated no treatment was available for these conditions." (*PageID#* 64).  However, ALJ Lombardo failed to account that even Dr. Danopulos opined that Plaintiff's vision, with glasses, "was not good" (*PageID#* 393); and due to his vision, he has been denied a driver's license.  (*PageID#* 394).  ALJ Lombardo also failed to account for Dr. Kessler's opinion that Plaintiff cannot read smaller type, would tire easily when reading large type, and should avoid working around heights or hazards.  (*PageID#* 456).  The Commissioner acknowledges the ALJ did not include a restriction that Plaintiff cannot work at heights or under other hazardous conditions, but nonetheless argues that a review of the *Dictionary of Occupational Titles* entries for mail clerk and routing clerk jobs identified by the VE show that such jobs do not involve working at heights or amid hazardous conditions. (Doc. #13, *PageID#* 589).  Such an argument, while possibly persuasive in other cases, lacks merit in this matter.  As discussed previously, the positions of mail clerk and routing clerk were identified by the VE only when prompted by the ALJ to *not* consider a

22

limitation to simple, repetitive work.  (*PageID##* 96-97).  Thus, such positions no longer

appear to be applicable here.  Moreover, even assuming the positions of mail clerk and

routing clerk were applicable and do not involve working at heights or amid hazardous

conditions, the VE did not consider also wether such positions would be available to a

hypothetical worker who has other visual limitations like Plaintiff, such as an inability to

read smaller type or tiring easily when reading large type.  *See PageID#* 456.

Accordingly, the ALJ's failure to include visual limitations is not harmless, and thus

constitutes an additional ground for reversal.[6]

## VI.    Remand is Warranted

If the ALJ failed to apply the correct legal standards or his factual conclusions are

not supported by substantial evidence, the Court must decide whether to remand the case

for rehearing or to reverse and order an award of benefits.  Under Sentence Four of 42

U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's

decision "with or without remanding the cause for rehearing."  *Melkonyan v. Sullivan*,

501 U.S. 89, 99 (1991).  Remand is appropriate if the Commissioner applied an erroneous

principle of law, failed to consider certain evidence, failed to consider the combined

effect of impairments, or failed to make a credibility finding.  *Faucher v. Sec'y of*

*Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the

---

[6] In light of the need to remand this case, an in-depth analysis of Plaintiff's two remaining
challenges to the ALJ's decision is unwarranted.

23

evidence of disability is not overwhelming, and because the evidence of a disability is not strong while contrary evidence is weak. *See id.* However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of § 405(g) due to the problems previously discussed.

On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulation and Rulings and by case law, and to evaluate Plaintiff's disability claim under the required five-Step sequential analysis to determine anew whether Plaintiff was under a disability and whether his applications for SSI and DIB should be granted.

### IT IS THEREFORE RECOMMENDED THAT:

1. The ALJ's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Raymond Wagner was under a "disability" within the meaning of the Social Security Act;

3. This matter be **REMANDED** to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g) for further proceedings consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and,

4. The case be **TERMINATED** on the docket of this Court.

July 15, 2014

                                                                   s/Sharon L. Ovington
                                                        Sharon L. Ovington
                                                 Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).